Eastern District of Kentucky
F I L E D
JAN 0 9 2018
AT ASHLAND
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

Civil Action No. 17-1-HRW

JUDITH BROCK,                                                              PLAINTIFF,

v.                    **MEMORANDUM OPINION AND ORDER**

AT&T SERVICES, INC.,                                                       DEFENDANT.

This matter is before the Court upon the parties' cross Motions for Summary Judgment [Docket Nos. 14 and 15]. For the reasons set forth below, the Court finds that Defendant AT&T Services, Inc. is entitled to judgment as a matter of law.

### I.

Judith Brock filed this civil action against her employer, AT&T Services, Inc. (hereinafter "AT&T") pursuant to 29 U.S.C. § 1132(A)(1)(B), challenging the denial of her application for short-term disability benefits.

### A.

Plaintiff Judith Brock ("Brock") worked for AT&T Mobility Services, LLC ("AT&T") as a Clerk from October 10, 2001 through November 21, 2015 [Docket No. 12-1, Administrative Record 000059]. As an AT&T employee, Brock was an eligible employee in the AT&T Mobility Disability Program ("DP"), which is regulated by the Employee Retirement Income Security Act, 29 U.S.C. §1001 *et. seq.* ("ERISA"). [Docket No. 12-5, Plan 087]. The short-term disability ("STD") portion of the DP provides for benefits for up to 26 weeks after an eligible employee

has been determined to be partially or totally disabled. [Docket No. 12-3, Plan 056].

Under the terms of the DP, disability determinations are made by a third-party Claims Administrator, Sedgwick Claims Management Services, Inc., through the Integrated Disability Service Center ("IDSC"), which Sedgwick operates. [Docket No. 12-1, AR 000172]. The Claims Administrator is the only entity which determines whether or not a participant is disabled and is granted complete discretion to make such a decision. [Docket No. 12-5, Plan 068]. The plan participant must be under the care of a physician, provide their medical providers with a release and ensure that they submit medical information to the Claims Administrator in a timely manner. *Id.* at 067. After a review of the medical information, if the Claims Administrator denies the claim, the participant must be provided with an explanation as to the reason for denial of disability benefits. *Id.* at 084. A plan participant has the right to appeal the denial and can file a lawsuit if the claim is denied on appeal. *Id.* The Claims Administrator is granted complete discretion to grant or deny appeals for disability benefits under the Plan. *Id.* As with the initial claim decision, on appeal, the Claims Administrator must provide the participant with specific reasons why the disability benefits claim is denied. *Id.*

## B.

Plaintiff was employed by AT&T as a Clerk from October 1, 2001 until November 22, 2015. [Docket No. 12-1, AR 000059]. Her job was essentially sedentary and included filing, answering the phone, typing, precessing mail and providing general office support . *Id.* at 000012 and 000068.

As an AT&T employee, Plaintiff was a participant in the DP, described *supra*. During her tenure at AT&T, Plaintiff was diagnosed as having restless leg syndrome,

2

essential tremors and mild carpal tunnel syndrome [Docket No. 12-1 AR 000091, 000093].

On April 2, 2014, Plaintiff's treating physician, Dr. Suresh Kumar, saw the Plaintiff for her history of essential tremors and peripheral neuropathy which she indicated were made worse with stress or loud music. During that visit, he refilled her medication and told her to follow up in four – six months. [Docket No. 12-2, AR 000147-148].

She saw Dr. Kumar a little over two weeks later, August 20, 2014. She told Dr. Kumar that medication was controlling her restless syndrome and tremors. He, again, recommended a follow up visit in four-six months. *Id.* at 000143-144.

Plaintiff saw Dr. Kumar again, about seven months later on May 5, 2015, for a follow up of her restless leg syndrome and tremors. His prescription at that time was for an over the counter medication and he advised Plaintiff to continue the medication. He recommended a follow up in six months. *Id.* at 000140.

On November 16, 2015, Sedgwick, through the AT&T Integrated Disability Center, opened a disability claim for the Plaintiff. *Id.* at 000152-153.

Pursuant to Plaintiff's authorization, Sedgwick received the Initial Physician Statement ("IPS") which Dr. Kumar, Plaintiff's treating physician, completed on November 16, 2015 in which he stated that Plaintiff had been diagnosed with essential tremors which were "exacerbated with loud noise". He noted that he had increased the dosage on Plaintiff's medication which was expected to improve her functioning and suggested that Plaintiff be allowed to work away from loud noise "if possible". [Docket No. 12-1, AR 00016]

An initial review of Plaintiff's claim on November 23, 2015 indicated that the medical information did not support her disability claim. *Id.* at 00009.

However, Sedgwick made a decision to obtain a medical review of Plaintiff's claim and submitted it to an independent physician, Dr. Sherry Withiam-Leitch, a Board-Certified Neurologist, for evaluation. *Id.* at 000014 and Docket No. 12-2, AR 000110-11.

Prior to the medical review, Plaintiff saw Dr. Kumar on November 6, 2015. At that time, Plaintiff indicated that her tremors and restless leg syndrome were getting worse. Dr. Kumar increased her medication and told her to follow up within his office in 4-6 months. The report did not indicate that the Plaintiff was disabled. *Id.* at 000086-89.

On December 15, 2015, Dr. Withiam-Leitch reviewed the IPS completed by Dr. Kumar and also attempted to reach him by phone. [Docket No. 12-2, AR 000110]. Dr. Withiam-Letich concluded in her report that there were "insufficient objective medical findings" to support a finding that Plaintiff was precluded from performing her sedentary job as a Clerk. *Id.*

On December 16, 2015, Plaintiff saw Dr. Kumar for increased tremors as well as numbness and weakness in her hands. *Id.* at 000094. Dr. Kumar recommended a nerve conduction study for the numbness and weakness in Plaintiff's hands, increased her medication for her tremors and determined that the current dosage of medication was controlling Plaintiff's restless leg syndrome. *Id.* at 000095.

Plaintiff's claim for short-term disability benefits was denied on December 18, 2015. Plaintiff submitted an appeal of the initial benefit denial on January 19, 2016. *Id.* at AR000097.

Sedgwick submitted Plaintiff's appeal for review to two (2) independent physicians, Dr. Roberto Ramierz and Dr. Charles Brock. *Id.* at 000029-30.

Dr. Ramierz, Board-Certified in Internal Medicine, reviewed Plaintiff's medical records and twice attempted unsuccessfully to contact Dr. Kumar, ultimately determining that

4

Plaintiff was not precluded from performing her job as of November 29, 2015. *Id.* at 000069. He based his conclusion on the lack of objective medical evidence to indicate Plaintiff was disabled. He noted that there were no neurological changes upon physical exam and Plaintiff was being treated with appropriate medication for her tremors, peripheral neuropathy and restless leg syndrome. *Id.*

Dr. Brock, Board-Certified in Neurology and Pain Management, also conducted an independent review of Plaintiff's medical records. He also tried and failed, on two separate occasions, to reach Dr. Kumar. (Ex. A, AR000071). He also determined that Plaintiff's medical records did not support a finding that she was disabled from performing her job as a Clerk from November 29, 2015. He found that there was a lack of any abnormalities other than a head tremor and that Dr. Kumar's plan was to adjust Plaintiff's medication as needed for her tremors and restless leg syndrome. Dr. Brock's only recommendation was that Plaintiff be allowed to work in a quiet environment. *Id.* at 000072-7.

Sedgwick representative spoke to Plaintiff's Attendance Manager, Marjorie Barney, on February 17, 2016. Ms. Barney indicated that Plaintiff had an accommodation several years ago due to loud noise in the center and Plaintiff was moved away from the music. Ms. Barney also indicated that as of 2015, there was no longer any loud music or noises in the center and that only "low volume" music was played. *Id.* at 000032.

On February 24, 2016, a Sedgwick representative followed up with the Plaintiff. Plaintiff reported that while loud music was no longer played in the center, employees had personal sound systems on which they played music. Plaintiff noted that she could not tolerate the music so she took vacation in November, 2016 and, because she felt she

5

could not return to her job, she filed a disability claim. *Id.* at 000034.

Plaintiff's appeal was denied and she was notified of the denial on April 15, 2016 via letter which set forth the reasons for the decision by the IDSC, including that the reviews of her medical records from Dr. Kumar for the period April 2, 2014 through January 13, 2016 did not support a finding of any condition so severe or uncontrolled with medication as to prevent her from performing her job as a Clerk as of November 22, 2015. *Id.* at 000056.

This lawsuit followed.[1] Both parties seek summary judgment.

### III.

Under Federal Rule of Civil Procedure 56©, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56©; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). So long as the movant has met its initial burden of "demonstrat[ing] the absence of a genuine issue of material fact," *Celotex*, 477 U.S. at 323, and the nonmoving party is unable to make such a showing, summary judgment is appropriate. *Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir.1989). In considering a motion for summary judgment, "the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." *Kochins v. Linden-Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir.1986); *see also Matsushita Elec. Indus. Co. v.*

---

[1] This civil action was initially filed in Carter Circuit Court and removed to this Court by Defendant pursuant to 42 U.S.C. § 1331.

*Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

When confronted with a properly-supported motion for summary judgment, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see also Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 250 (6th Cir.1998). A genuine issue of material fact exists for trial "if the evidence [presented by the nonmoving party] is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In essence, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

The standard of review for cross-motions of summary judgment does not differ from the standard applied when only one party files a motion. *Taft Broad. Co. v. U.S.*, 929 F.2d 240, 248 (6th Cir.1991). "The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts. Rather, the court must evaluate each party's motion on its own merits." *Id.* (citations omitted). Thus, when the court reviews cross-motions for summary judgment, it "must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party." *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 506-07 (6th Cir.2003).

The first step in an ERISA-governed benefits action is to determine the applicable standard of review—either arbitrary and capricious or de novo—based on the language in the

benefit plan. See *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Here, both parties agree that the Court should review the administrator's denial of benefits under the arbitrary and capricious standard of review.

"[T]he arbitrary and capricious standard is the least demanding form of judicial review of administrative action." *Williams v. Int'l Paper Co.*, 227 F.3d 706, 712 (6th Cir.2000). When applying this standard, this Court "must decide whether the plan administrator's decision was 'rational in light of the plan's provisions.' " *Id.* (*quoting Daniel v. Eaton Corp.*, 839 F.2d 263, 267 (6th Cir.1988)). Stated differently, "[w]hen it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Davis v. Ky. Fin. Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir.1989) (*quoting Pokratz v. Jones Dairy Farm*, 771 F.2d 206, 209 (7th Cir.1985)). But simply because the arbitrary and capricious standard applies does not mean that this Court's review is inconsequential. *Moon v. UNUM Provident Corp.*, 405 F.3d 373, 379 (6th Cir. 2005).

The Court's review of the administrative decision must be based only upon the material in the administrative record, and therefore, the Court "may not consider new evidence or look beyond the record that was before the plan administrator." See *Wilkins v. Baptist Mem'l Healthcare Sys., Inc.*, 150 F.3d 609, 616 (6th Cir.1998); see also *Crews v. Central States*, 788 F.2d 332 (6th Cir.1986) (limiting the review to the record before the administrator when the standard is arbitrary and capricious). The Court may consider the parties' arguments concerning the proper analysis of the evidentiary materials in the administrative record, but it may not admit or consider any evidence not presented to the administrator. *Id.*

8

Finally, In analyzing the plaintiff's claims, it is of no consequence whether the Court agrees or disagrees with the decision of the Administrator to terminate Madden's benefits. The Court must only determine whether the Administrator's decision was arbitrary or capricious.

## IV.

Although the plaintiff has raised several issues, the crux of this case is whether there is evidence in the administrative record to justify the defendants' actions in light of the applicable review standard.

First, Plaintiff contends that Sedgwick ignored the opinion of her treating physician that she is disabled. This argument is somewhat curious, given that the administrative record does not contain such an opinion. Dr. Kumar's Initial Physician Statement (IPS) on November 16, 2015 did not indicate that Plaintiff was disabled; he only request was to allow Plaintiff to work in a quiet room without loud noises. Nor did he did cite any other functional limitations. On December 16, 2015, Dr. Kumar included an indication in his notes that he would "discuss with the doctor in charge of that and see whether she can go on Disability." That is the only thing in the record from Dr. Kumar which could be considered a statement as to disability. However, in his notes from that appointment, he stated that Plaintiff's essential tremor symptoms were mostly controlled with medication, her restless leg syndrome symptoms were controlled with medication and he would conduct nerve conduction study to examine the numbness and weakness in Plaintiff's hands. These notes do not support Plaintiff's suggestion that Dr. Kumar believed her to be disabled. Moreover, the nerve conduction study Dr. Kumar which he performed on January 30, 2016, was a "normal study".

Sedgewick had the same records this Court has reviewed. The administrator's job is to weigh the evidence and come to a reasoned decision. This duty was fulfilled here because Sedgwick considered all of the evidence, including the notes and assessments of the treating physician, and made a reasoned decision that Plaintiff was not disabled based on all of the evidence.

Plaintiff also argues that the Administrator's decision was arbitrary and capricious because the Administrator relied on the recommendations of physicians who had simply reviewed her medical files rather than actually examining her. This argument is unavailing as well. There is no question that this Court should consider the fact that the physicians conducted file reviews rather than physical exams. And while the failure to conduct a physical examination "may, in some cases, raise questions about the thoroughness and accuracy of the benefits determination," there is "nothing inherently objectionable about a file review by a qualified physician in the context of a benefits determination." *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 295–96 (6th Cir.2005).

Furthermore, Plaintiff has not presented evidence showing that the review by these doctors was in any way inadequate, and the Administrator's reliance on a file review, standing alone, is not sufficient for a court to conclude that the determination was arbitrary and capricious. See *id.* at 295. A file review is considered inadequate when it is established that the independent physician(s) did not review the full record or summarily rejected a treating physician opinion without providing reasons for the rejection. *Jensen v. Aetna Life Ins. Co.* 32 F. Supp. 3d 894, 902 (W.D. Tenn. 2014). Dr. Brock and Dr. Ramierz considered all of Plaintiff's medical records including any statements and notes by her treating physician. Neither physician made any

credibility determinations regarding Plaintiff's medical history or symptoms. Each physician found that Plaintiff's symptoms were being controlled with medication and there were no objective findings that she could not perform her job as a Clerk.

Nor was Sedgwick required to have Plaintiff undergo an examination before making a determination regarding her STD claim. The lack of a physical examination is not a determining factor as to whether or not the denial of an STD claim is arbitrary and capricious. Particularly when Plaintiff has not shown how a physical examination would result in a different decision. *Mellian v. Hartford Life & Accident Ins. Co.*, 161 F. Supp. 3d 545, 565 (E.D. Mich. 2016). (Failure to obtain medical examination is not arbitrary and capricious when independent physician reviewers have conducted thorough examination of medical records).

Plaintiff also suggests that Sedgwick "predetermined" that she was not entitled to benefits. Yet this assertion is not supported by the record. The record establishes that once an initial review determined that there was insufficient medical information to support Plaintiff's claim for STD benefits, which at that time consisted of only the IPS report from Dr. Kumar, Sedgwick delayed any final decision until additional medical information was received. Thereafter, Sedgwick spoke with the Plaintiff, attempted to reach Dr. Kumar and eventually referred her medical file to an independent physician reviewer for a decision on her initial claim for STD benefits. The sequence of events belies Plaintiff's claim that Sedgwick somehow "pre-judged" her claim.

Finally, Plaintiff argues that the administrative decision is flawed because conflict of interest exists because the plan administrator is also the payor of benefits. A court must take into consideration the conflict of interest that arises when one entity is both the administrator and the

insurer: "where there is a monetary incentive for the insurance company or its claims administrator to deny the claim, 'the potential for self-interested decision-making is evident.' " *Rabuck v. Hartford Life and Acc. Ins. Co.*, 522 F.Supp.2d 844, 872 (W.D.Mich.2007) (*quoting University Hosps. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 846 n. 4 (6th Cir.2000)). This consideration applies, however, only where there is "significant evidence" that the insurer was motivated by self-interest. *Peruzzi v. Summa Medical Plan*, 137 F.3d 431, 433 (6th Cir.1998). Such is not the case here. AT&T are completely separate entities. And Plaintiff fails to cite to any evidence that the third-party Claims Administrator, Sedgwick Claims Management Services, Inc., through the Integrated Disability Service Center ("IDSC"), which Sedgwick operates, is also the payor of benefits under the AT&T Mobility Disability Program ("DP"). To the c0ontrary, documents in the administrative record establish that short-term disability benefits paid to eligible employees under the DP are provided from a trust which is funded by contributions from AT&T. [Docket No. 12-5, p. 92]. Moreover, while AT&T Services, Inc., is the Plan Administrator, it does not determine whether an employee is entitled to benefits under the plan.

> [AT&T has] delegated complete discretionary fiduciary responsibility for all disability determinations...to determine whether a particular Eligible Employee who has filed a claim for benefits is entitled to benefits under the Program, to determine whether a claim was properly decided, and to conclusively interpret the terms and provisions of the Program" to the Claims Administrator.

*Id.* at 91.

Given that AT&T grants complete discretionary authority to the claims administrator to

12

determine benefit eligibility, there is no evidence conflict of interest.

## V.

While Plaintiff disagrees with the Administrator's ultimate decision, she fails to point to anything to establish that the Administrator's decision was not a "reasoned" one. In short, the Administrator had evidence from which it rationally concluded that Plaintiff was not disabled under the Plan. *See Williams*, 227 F.3d at 712 (explaining that when a decision is rational in light of a plan's provisions, it is not arbitrary or capricious). Because Plaintiff has not demonstrated that the Administrator's reliance on such evidence was unreasonable, arbitrary and capricious, this Court must affirm the Administrator's decision.

Accordingly, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [Docket No. 14] be **SUSTAINED** and Plaintiff's Motion for Summary Judgment be **OVERRULED** [Docket No. 15].

This 9th day of January, 2018.



Signed By:
*Henry R. Wilhoit, Jr.*
United States District Judge